[Civ. No. 13712.  Second Dist., Div. One.  Sept. 24, 1942.]

VERA EIGNER, Appellant, v. WILLIAM S. RACE et al., Respondents.

Bartlett & Kearney and Wm. B. Gilroy for Appellant.

Ezra Neff for Respondents.

WHITE, J.—Plaintiff appeals from a judgment of non-suit rendered upon defendants' motion made at the close of plaintiff's case.

The complaint herein contained two causes of action, the first of which charged that defendants were in control of a large, active and powerful Great Dane dog, which prior to the time of the accident here in question was accustomed to violently jump upon and against children and adults and to "fawn violently upon them and knock them off their feet"; that defendants were acquainted with and knew of these facts. It was then alleged that upon the date of the accident, in the city of Beverly Hills, while plaintiff was lawfully upon a public sidewalk, the above mentioned dog violently jumped upon and against her, knocked her off her feet and upon the sidewalk, as the result of which she suffered serious injuries. This cause of action was based upon the theory set forth in the Restatement of the Law of Torts, volume III, page 20, to the effect that the keeper of a large dog, who while knowing the animal is not vicious, is nevertheless cognizant of the animal's propensities to "fawn vio-

lently upon people," is liable for harm which results by reason of the playfulness or overdemonstrative friendliness of such dog.

In her second cause of action plaintiff repleaded the foregoing allegations of the first, and then charged that "on or about November 9, 1939, at and near the intersection of Wilshire Boulevard and Santa Monica Boulevard, public streets in the city of Beverly Hills . . ., defendants and each of them so negligently kept, maintained and controlled said dog that he violently jumped upon and against plaintiff and knocked plaintiff to the sidewalk."

By their amended answer defendants set up a general denial of the averments contained in the complaint and by way of special defenses pleaded contributory negligence, inevitable and unavoidable accident, and the statute of limitations. (Code Civ. Proc., § 340.)

Upon this appeal plaintiff does not challenge the correctness of the trial court's ruling granting a nonsuit as to the first cause of action, for the reason that no evidence was introduced to support the allegations thereof, and the sole question presented to us is the correctness of the court's ruling granting a nonsuit as to the second cause of action.

There is little if any dispute concerning the factual background surrounding this litigation. Briefly, the facts are that on November 9, 1939, the defendants, husband and wife, were living with their minor daughter, Nancy Race, in the city of Beverly Hills. Upon the premises occupied by them the defendants owned and housed a Great Dane dog called "Mark." At all times pertinent hereto the plaintiff also resided in Beverly Hills, where she owned and operated a shop located on Wilshire Boulevard, wherein she sold children's garments and clothes. About the middle of the afternoon of the date last mentioned, plaintiff alighted from an automobile in front of her place of business. She was returning from a shopping tour in the city of Los Angeles, and her arms were filled with small packages, while her purse was hanging from one of her arms. When plaintiff stepped from the automobile and walked toward the entrance to her store, she encountered the child Nancy and the aforesaid dog. At this time the dog was directly in front of the store entrance, looking through the front door of the store, while the little girl was attempting to tie the dog's leash to the awning rail. According to the testimony, plaintiff was 5 feet 2½ inches

tall and weighed about 125 pounds, while the dog weighed 120 pounds. Plaintiff testified that she was unacquainted with dogs of the size of the Great Dane and totally unfamiliar with their habits. She further testified: "The dog at the time I came up was facing the door as if he was looking in, and was right in front of the door." Standing behind the dog, and being acquainted with the little girl, Nancy Race, plaintiff said to her, "Hello, Nancy, what a beautiful dog you have," when, according to plaintiff, "All of a sudden the dog sprung against me and knocked me over on the sidewalk. I fell backward on the sidewalk." When asked what part of the dog's body came in contact with her, plaintiff testified, "I am not sure what part of the dog came in contact with me. It seems like it was the side of the dog." At the time plaintiff spoke to the little girl, she was standing "Quite close to the dog, maybe a foot or so away. It would not be less than a foot. I was within reach, I would say, about a foot or a foot and a half. The dog was not facing me." Plaintiff further testified: "The dog did not bite me and never attempted to bite me. He didn't raise up on his hind paws and come at me with his front paws. . . . The dog did not either spring at me or leap at me. He just came against me with great force."

Following the incidents just narrated, and after plaintiff had been assisted into her store and placed upon a davenport, the child Nancy, who was in charge of the dog, entered and said, "Oh, Miss Eigner, I am so sorry that Mark (the dog) knocked you over. He has a habit of leaning against people."

There was introduced in evidence at the trial an ordinance of the city of Beverly Hills reading in part as follows: "Section 3. It is hereby declared to be unlawful for any person, firm or corporation owning, controlling or having in his or its care or custody any dog, whether licensed or unlicensed, to suffer or permit such dog to be at large upon any public street, alley or public place, or upon any vacant, unoccupied or unenclosed lot, lands or premises other than vacant and closed premises owned by such person, firm or corporation, and provided for such purpose, within the city of Beverly Hills, except when said dog is upon a leash in the hands of a responsible person capable of controlling said dog."

It was stipulated that at the time in question the child Nancy was about twelve years of age, approximately five feet tall, and weighed some ninety-five pounds.

It is unnecessary to refer here to the oft-repeated rules governing the limitations and duties devolving upon trial courts in passing upon a motion for a nonsuit. Suffice it to say that the evidence must be interpreted most strongly against the defendant when the court has under consideration a motion for a nonsuit. It was the duty of the court, for the purpose of the motion, to assume the truth of all the evidence adduced on behalf of plaintiff's case, and without regard to the conflicts, if any, appearing therein, to adopt only those inferences reasonably and fairly deducible therefrom which are to the plaintiff most favorable. (*Estate of Flood,* 217 Cal. 763 [21 P. (2d) 579]; *Estate of Lances,* 216 Cal. 397 [14 P. (2d) 768].)

In the light of the rules just enunciated, appellant contends that the evidence conclusively established that she was free from any contributory negligence. We are in accord with this claim. Certainly there was no negligence upon the part of appellant in alighting from the automobile in front of her place of business and entering therein under the circumstances here present. She was at a place where she had a right to be and where it was necessary for her to be in order to enter her store, and there is no evidence that she said or did anything that would or should tend to excite, alarm or disturb the dog.

One of the grounds upon which the motion for nonsuit was made was that there was no showing that the defendants or either of them were guilty of any negligence contributing proximately to the injuries sustained by plaintiff. In this regard, plaintiff urges that respondents were guilty of negligence in permitting a child 12 years of age, weighing 95 pounds, to have the custody of a 120-pound Great Dane dog upon a busy boulevard, when the city ordinance above quoted prohibited any person from permitting a dog to be upon the public streets of the municipality unless the animal "is upon a leash in the hands of a responsible person capable of controlling the dog." It is manifest that if by permitting their minor child to have custody of the dog in a public thoroughfare the parents violated the provisions of the ordinance and such violation contributed directly and proximately to the injuries of plaintiff, then respondent parents were guilty of negligence as a matter of law. And if the negligence which was the proximate cause of the accident consisted of the violation of a municipal ordinance prescribing the conditions under

which a dog might be permitted upon a public highway, plaintiff was entitled to clothe the court with knowledge of the existence of such ordinance, and this she was entitled to do without having specially pleaded it, because the cause of action was not for a violation of the ordinance, but for the negligence of respondents in permitting the child to take the animal upon the highway in defiance of the ordinance; and the ordinance was therefore only evidence of such negligence. (*Szopieray* v. *West Berkeley etc. Co.*, 194 Cal. 106, 112 [227 Pac. 720]; *Scragg* v. *Sallee*, 24 Cal. App. 133, 140 [140 Pac. 706].)

■ After sustaining an objection to the introduction of the ordinance in evidence on the ground that the same had not been pleaded, the court later reversed its ruling, with the statement: "Rather than to take the time to read it, I will reverse the ruling. Let it be received in evidence. I do not think it has any weight in any event." It is now contended by appellant that the attitude of the court expressed in the statement just quoted precluded her from having the benefit of this evidence. However, we cannot assume, in the absence of a clear showing to that effect, that the court did not consider the ordinance in ruling upon the motion for a nonsuit. While the statement made by the court indicates an intention upon his part not to read the ordinance before receiving it in evidence, it does not foreclose, in the absence of a showing, and in view of the presumption that official duty was performed, the assumption that the trial court gave the ordinance consideration with all the other evidence in the case when making his decision on the motion for a nonsuit.

■ However, even though we concede error upon the part of the trial court in making the statement in question, nevertheless we cannot reverse the judgment, because of the provisions of section 4½ of article VI of our state Constitution. The evidence adduced at the trial herein points unerringly to the conclusion that the injuries sustained by appellant were the result of an unavoidable accident. Even though it be admitted that respondents violated the ordinance, we fail to perceive how, under the evidence in the case at bar, such violation can aid appellant, for the reason that the evidence fails to show any causal connection between the alleged violation of the ordinance and the injuries sustained by appellant.

■ Under the doctrine laid down in the California cases, it is the settled rule that negligence *per se* can only be predicated upon the violation of a local ordinance when the accident is

proximately contributed to by such violation. (*Connell* v. *Harris*, 23 Cal. App. 537, 541 [138 Pac. 944].) ▆ Without here repeating the evidence which we have hereinbefore set forth, we are irresistibly driven to the conclusion that no rational well-constructed mind can reasonably draw from it the conclusion that the accident would not have occurred had the dog been in charge of a much older, larger, more robust or alert person than the child here involved. ▆ To warrant the denial of a motion for a nonsuit the evidence must be sufficient to raise more than a mere conjecture or surmise that the facts are as alleged. It must establish a situation upon which reasonable minds might be expected to, would, or could differ. ▆ When we refer to an unavoidable accident, we do not mean one which it was physically impossible in the nature of things for the defendant to have prevented, but one in which ordinary care and diligence could not have prevented the happening of the thing that did happen; in other words, that what occurred happened unexpectedly and without fault and not because of negligence. The term ''unavoidable accident'' has been defined as meaning an accident which cannot be avoided by that degree of prudence, foresight, care and caution which the law requires of everyone under the circumstances of the particular case, and which is not occasioned in any degree by want of such care and skill as the law holds every person bound to exercise. In short, an unexpected catastrophe or happening which occurs without anyone being to blame for it; that is, without being guilty of negligence in doing or permitting to be done, or omitting to do, a particular thing, which act or omission caused plaintiff's injury. ▆ The evidence here, without contradiction, shows that appellant came up behind the dog; spoke to the child having custody of the dog; that the animal turned around, and in so doing brushed against appellant and knocked her down. We cannot see where the conduct or behavior of the holder of the dog's leash, however careful, prudent or circumspect it might be, could or would have prevented the accident from occurring in the manner it did. It must therefore be held that the trial court was justified in granting a nonsuit upon the ground that the accident here in question was an unavoidable one.

For the foregoing reasons, the judgment is affirmed.

York, P. J., and Doran, J., concurred.