[Civ. No. 34456. Second Dist., Div. Five. Dec. 8, 1970.]

MICHAEL BEAUPRE et al., Plaintiffs and Appellants, v.
CAL NAVE et al., Defendants and Respondents.

COUNSEL

Browne Green and Edward L. Lascher for Plaintiffs and Appellants.

Murchison, Cumming, Baker & Velpmen, John Baker and Henry F. Walker for Defendants and Respondents.

## OPINION

**STEPHENS, Acting P. J.**—This is an appeal from a judgment for defendants in an action in multiple causes brought by unrelated plaintiffs seeking damages from defendant restaurant proprietors for allegedly causing plaintiffs to contract infectious hepatitis. The crux of the appeal is the claim that proximate cause for the common illness allegedly suffered by the several plaintiffs was established as a matter of law. Plaintiffs also contend that the crucial findings on the issue of causation are inadequate, and that "proximity of causation is immaterial to claims which do not sound in common law tort."

The issue revolves around the claim that all of the plaintiffs were frequent patrons of defendants' restaurant and that they all came down with hepatitis within a span of a few days of one another. It is undisputed that defendants' son, Michael, came down with the disease on January 19, 1966, a short time before five of the plaintiffs fell ill, and the same day as did the sixth plaintiff. Michael was a food handler at the restaurant and worked there as a cleanup man and dishwasher.

The cause of the illness from which each plaintiff suffered is not so well known that we may rely upon any causative evidence other than that produced through the testimony of the medical experts, and since this appeal seeks to reverse the finding of fact on the issue of causation drawn by the trial judge sitting without a jury, we look only to that evidence which would support his conclusion. ■ If the evidence is conflicting or subject to different inferences, the trial court's determination is conclusive. (*McCurter* v. *Norton Co.,* 263 Cal.App.2d 402 [69 Cal.Rptr. 493]; *Aboudara* v. *City etc. San Francisco,* 114 Cal.App.2d 630 [251 P.2d 32].) ■ Only where the evidence is clear, certain, and without dispute, and points unerringly to the determination of a particular issue, may it be said that such issue has been resolved as a matter of law.

■ The testimony of one of the medical experts, Dr. Redeker, was that he "could not contest the basis of any opinion or knowledge, either one, that [plaintiffs] did not get [hepatitis infection] from the restaurant, nor on

the other hand could I have any strong feeling at all that they did. I think it is pure speculation." On cross-examination, this expert testified that the "odds are about no more than 10% [that plaintiffs 'got it from the restaurant']."

Another expert, Dr. Chapman, testified that Michael did not transmit the hepatitis to the plaintiffs and that plaintiffs' infection did not occur as a result of their association with the restaurant. This expert also testified that "[t]he usual means of transmission of hepatitis in the community is from person to person contact, rather than from a common source outbreak due to vehicles such as water and food" and that only between 10 and 20 "foodborne outbreaks" ever have occurred with appropriate documentation worldwide; "these are very rare."

Relative to the contention that the illness was transmitted to plaintiffs through Michael, a Dr. Breslaw opined that it was by this means that the illness was transmitted to plaintiffs; however, other evidence given by this same witness appears to eliminate this source as the cause. Dr. Breslaw testified that on the basis of the onset dates, it could not be said that any one of the persons gave it to another; that he could not say one way or the other; it would have to be speculation only. He was of the opinion that ingestion of the virus does not immediately result in any illness or symptoms and that the illness is transmitted through the oral-fecal route, the gastrointestinal tract; "through the mouth, through ingesting of the virus, and then the virus entering the intestine . . . and then entering through the intestinal wall into the body and into the blood stream, and then going from the blood stream into the liver and then attacking the liver."

Dr. Chapman stated that the average period of incubation for infectious hepatitis is 25 to 30 days. Dr. Redeker testified that the average incubation period between ingestion and onset of symptoms was 40 days; that it varies from 37 to 40 days, and the virus appears in the stool about the 25th day. Dr. Chapman said there was an outside possibility, not a probability, that the virus could be transmitted 15 days after ingestion. The conclusion reached is that on the basis of the onset dates, it could not be said that any of the persons transmitted it to the others.[1]

In the light of this expert testimony and the conclusions reached, without substantial contradiction, that the various sanitation violations raised relating to the restaurant were not the cause of the infections, we conclude that it is unnecessary to answer the lengthy arguments relative to proximate cause. ■ As the plaintiffs point out, proximate cause is distinct from

---

[1]The onset dates were: Michael, January 19; plaintiff Feldman, January 19; plaintiff Riley, January 27; all of the other plaintiffs' onset dates were between the 19th and the 27th.

actual cause (*Tate* v. *Canonica,* 180 Cal.App.2d 898, 901 [5 Cal.Rptr. 28]), and care must be taken to avoid confusing two elements which are separate and distinct: factual causation and proximate-legal causation. (*Poore* v. *Edgar Bros. Co.,* 33 Cal.App.2d 6, 9-10 [90 P.2d 808].) Certainly, if one cannot conclude that the illnesses were caused by some act or inaction of defendants, it cannot be found that whatever defendants did or did not do resulted in the legal cause and hence imposed liability upon them.

■ The case of *Green* v. *Menveg Properties, Inc.,* 126 Cal.App.2d 1 [271 P.2d 544] completely answers the problem before us. In *Green,* the court said (at p. 11): "Proof of violation of a law does not establish actionable negligence unless there exists a causal connection between the violation and the act which causes injury, or, as some courts express it, unless there exists reasonable grounds for a belief that the violation was a proximate cause of the accident or injury. (*Page* v. *Mayors,* 191 Cal. 263 [216 P. 31]; *Shimoda* v. *Bundy,* 24 Cal.App. 675 [142 P. 109]; *Roos* v. *Loeser,* 41 Cal. App. 782 [183 P. 204]; *Blodgett* v. *B. H. Dyas Co.,* 4 Cal.2d 511 [50 P.2d 801]; *Moon* v. *Payne,* 97 Cal.App.2d 717 [218 P.2d 550]; *Knowles* v. *Roberts-at-the-Beach Co.,* 115 Cal.App.2d 196 [251 P.2d 389].)

"*Cragg* v. *Los Angeles Trust Co.,* 154 Cal. 663 [98 P. 1063, 16 Ann. Cas. 1061] and *Finnegan* v. *Royal Realty Co., supra,* 35 Cal.2d 409 [218 P.2d 17], which defendant says are directly in point, were cases in which there was a clear connection between the violation of the ordinance and the injury. In the *Cragg* case the negligence consisted of the employment of an inexperienced and unlicensed elevator operator without investigation as to his competency. In the *Finnegan* case there was reason to believe that a door which opened inward instead of outward, as required by the ordinance, was a proximate cause of plaintiff's inability to escape more quickly from a fire. Defendant has not pointed out any connection between the failure to have a permit for the work, or the failure of Green to be registered, and plaintiff's accident. The sections of the code were not admissible unless there was reason to believe that compliance with the requirements would have prevented the accident or rendered it less likely to occur. If no such reason existed there was no causal connection between the failure to comply and the falling of the pole." (Cited with approval in *Hom* v. *Clark,* 221 Cal.App.2d 622, 660 [35 Cal.Rptr. 11].)

■ The other causes of action (founded upon warranty or strict tort liability) also fall by virtue of the same evidence. The court found upon substantial evidence that the illnesses were not caused by anything done or not done by the defendants.

■ One strongly urged contention of plaintiffs is that the findings relative to proximate cause are inadequate in any event. There is no merit to this contention. The findings objected to are as follows: "20. No action or in-

action of any defendant was a proximate cause of hepatitis injury or damage to any such plaintiff." "22. No breach of any express warranty to any plaintiff on the part of any defendant was a proximate cause of hepatitis injury or damage to any such plaintiff." "23. No hepatitis condition, injury or damage, in or to any plaintiff, in any way or in any manner, was proximately caused by or proximately resulted from: (a) Any action or inaction of any defendant, (b) Any action or any inaction of any person for whom any defendant was either liable or responsible, or (c) Any condition or any thing for which any defendant was either liable or responsible." There is a further finding of fact to which plaintiffs have not drawn our attention; it is entirely possible that its impact did not appear to them, though to us it is determinative of the argument relative to insufficiency of the findings. It reads as follows: "26. Except as specifically found herein, all of the allegations of the Complaint are untrue; and all of the allegations of the Answer are true." When this finding is read for its effect upon paragraph VI[2] of the first cause of action (which is incorporated in each of the other causes of action), it is clear that the court not only considered *proximate cause,* but *cause in fact,* and determined that the allegations relating to the restaurant's "food, beverages, utensils and facilities" containing "harmful, injurious, foreign substances and disease, mainly hepatitis and yellow jaundice, bacteria and germs" were "untrue," thus finding that *cause in fact* was not established. The trial court did find that: "[7.] From time to time defendants did violate health and sanitary rules . . ."; that "[8.] From time to time, the food, beverages, utensils, bathroom and floors of the restaurant were unclean"; "[9.] From time to time the food, beverages, utensils, bathroom and floors of the restaurant were not reasonably fit for the purpose for which they were intended." But the sum of all of these findings falls short of the necessary finding that anything that the defendants did or failed to do *caused* any injury to the plaintiffs.

The findings adequately state the ultimate fact, and probative or evidentiary facts supportive thereof are neither required nor proper. As we stated in *Kanner* v. *Globe Bottling Co.,* 273 Cal.App.2d 559, 566 [78 Cal.Rptr. 25]: "Plaintiff next contends that the judgment of the trial court is not supported by proper findings of fact or conclusions of law. Correlatively, plain-

---

[2]Paragraph VI: "That said food, beverages, utensils and other facilities of said restaurant were not clean, wholesome and free from harmful and injurious foreign substances and disease, and were not reasonably fit for the purposes for which they were intended; said restaurant and its said food, beverages, utensils, and facilities were unclean and unwholesome *and contained harmful, injurious, foreign substances and disease, mainly, hepatitis and yellow jaundice, bacteria and germs.* Said unwholesome and unclean conditions and the presence of harmful germs and bacteria on said food, utensils, and other facilities constituted a breach of the defendants' express and implied warranty aforesaid to the plaintiff herein." (Italics added.)

tiff complains that the trial court erred in failing to hold a hearing on his objections to the court's findings and in refusing to make special findings.

"Plaintiff complains that the findings are deficient in that no findings were made with respect to many of the items of repair for which compensation was sought. The trial court found that defendant breached the lease in three particulars only and in no others (Finding V), and that plaintiff suffered no other damage to the premises attributable to defendant's occupancy thereof during the term of the lease (Finding VI). It is obvious that the enumeration of these particulars to the exclusion of all others obviated the necessity of specifically negating every other item of repair claimed by plaintiff. As pointed out in *Page* v. *Bakersfield Uniform etc. Co.,* 239 Cal.App.2d 762, 771 [49 Cal.Rptr. 46]: 'The respondents, however, properly urge that the court made sufficient specific findings on all essential issues, and that the setting out of each violation committed by appellants and respondents would serve no useful purpose and would result only in the inclusion of a mass of evidentiary detail.' And in *Bley* v. *Ad-Art, Inc.,* 250 Cal.App.2d 700, 712-713 [59 Cal.Rptr. 26], it is stated: 'Moreover, a specific finding is not required on an issue where it follows by necessary implication from a general finding [Citation]. And, finally, it is also settled that where proper findings have been made upon the various issues of the case it is not necessary to negate issues contradictory thereto. The finding on a particular issue is an implied negation of all contradictiory propositions [Citations].' "

The judgment is affirmed.

Aiso, J., and Reppy, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied February 3, 1971. Peters, J., Mosk, J., and Sullivan, J., were of the opinion that the petition should be granted.